# United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | Harry D. Leinenweber | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 00 C 2487 | **DATE** | 8/8/2002 |
| **CASE TITLE** | Roberta Kramarski vs. Village of Orland Park, et al | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]

(2) ☐ Brief in support of motion due _____.

(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.

(4) ☐ Ruling/Hearing on _____ set for _____ at _____.

(5) ■ Status hearing set for 5 Sept. 02 at 9:00 A.M..

(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.

(7) ☐ Trial[set for/re-set for] on _____ at _____.

(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.

(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
    ☐ FRCP4(m)  ☐ General Rule 21  ☐ FRCP41(a)(1)  ☐ FRCP41(a)(2).

(10) ■ [Other docket entry]  ENTER MEMORANDUM OPINION AND ORDER: The Village's Motion to Strike is DENIED. Defendants' Motion for Summary Judgment is GRANTED as to Counts II, III, V, VI, VII and IX and DENIED as to Counts I, IV and VIII.. Plaintiff's cross-motion for Summary Judgment is DENIED.

(11) ■ [For further detail see order attached to the original minute order.]

| | No notices required, advised in open court. | | | |
|---|---|---|---|---|
| | No notices required. | number of notices | **Document Number** |
| | Notices mailed by judge's staff. | AUG 0 9 2002 | |
| | Notified counsel by telephone. | date docketed | 173 |
| ✓ | Docketing to mail notices. | | |
| | Mail AO 450 form. | docketing deputy initials | |
| | Copy to judge/magistrate judge. | | |
| WAP | courtroom deputy's initials | date mailed notice | |
| | | mailing deputy initials | |

CLERK, U.S. DISTRICT COURT

02 AUG -8 PM 4: 12

Date/time received in central Clerk's Office

IN THE UNITED STATES DISTRICT COURT **FILED**
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

AUG - 8 2002

Judge Harry D. Leinenweber
U. S. District Court

ROBERTA KRAMARSKI,

                    Plaintiff,

          v.

VILLAGE OF ORLAND PARK, and
CHIEF OF POLICE TIMOTHY
MCCARTHY, in his individual and
official capacity.

                    Defendants.

Case No. 00 C 2487

Hon. Harry D. Leinenweber

**DOCKETED**

AUG 0 9 2002

## MEMORANDUM OPINION AND ORDER

Plaintiff Roberta Kramarski ("Kramarski") filed a nine-count complaint alleging claims under 42 U.S.C. § 1983, Title VII, the Americans with Disabilities Act (the "ADA"), the Family Medical Leave Act (the "FMLA"), and state law claims for Intentional Infliction of Emotional Distress and Retaliatory Discharge. Before the Court is the Motion of the Village of Orland Park and Chief McCarthy in his Official Capacity (collectively, "the Village") for Summary Judgment pursuant to FED.R.CIV.P. 56, the Village's Motion to Strike the report of Plaintiff's expert and declarations of certain individuals, and Kramarski's Cross-motion for Summary Judgment.

## BACKGROUND

Roberta Kramarski began working for the Village of Orland Park as a police officer in May 1996. In October 1996, Kramarski was

*173*

injured during a baton training exercise and allegedly suffered from chronic back pain, difficulty breathing and other health problems as a result. Kramarski claims that, during the course of her employment with the Village, she was subjected to a hostile work environment and discriminatory treatment due to her gender, including but not limited to:  persistent interference with her radio transmissions by fellow officers ("keying on"); regular failure or refusal of officers and supervisors to provide her with back-up; and derogatory and offensive comments referring to Kramarski's gender.  Kramarski also claims that Chief McCarthy and his command staff were aware of these problems but failed to take reasonable steps to remedy the situation.  The regular performance evaluations Kramarski received throughout her employment reflect that she was meeting or exceeding her employer's expectations.

On January 5, 1999, Kramarski underwent a simple outpatient nasal surgery to correct problems allegedly stemming from the baton training incident.  Unexpected complications arose and Kramarski's doctor found it necessary to place her on a prescription narcotic analgesic which, by Department regulation, precluded Kramarski from reporting for duty.  Following the surgery, Kramarski called in on the days she was scheduled to work and told a non-supervisory Department employee that she would not be in for work that day "due to her surgery," with no mention of the prescription medication. After several days of Kramarski calling in "sick," Commander Okon

called Kramarski at home to learn more details as to why she was not reporting for duty and to determine when she would return to work. Kramarski had a pending worker's compensation claim that she filed relating to her October 1996 injury which seems to have made her reticent to discuss her health issues in detail with the department. This reticence seems, in turn, to have frustrated and angered a Department that wanted its officer to return to work.

On January 19, 1999, Kramarski was served with notice that she would be subject to an interrogation the next morning addressing her ongoing absence from work. Kramarski tried to obtain the services of her worker's compensation attorney, Paul Pasche, for the hearing. Mr. Pasche could not attend the hearing and Kramarski was instead represented by John Rossi, an attorney from her union. At the interrogation, Kramarski refused to answer some questions dealing with her worker's compensation claim due to the absence of Mr. Pasche. Also during the interrogation, Kramarski was asked if she had any notes or records relating to communications she had with the Department regarding the days she was absent from duty. Kramarski was later asked to produce any such documents that she might possess.

Subsequent to this interrogation, Chief McCarthy filed a complaint with the Orland Park Board of Fire and Police Commissioners (the "BFPC") seeking the termination of Kramarski's employment. The complaint charged Kramarski with: failure to

notify her superiors that she was using prescription medication; refusal to answer seven questions during a departmental interrogation in violation of a direct order; failure to produce notes and documents pursuant to direct orders at the interrogation and at a second interrogation; and that Kramarski failed and refused to report for duty contrary to direct orders. A hearing was held before the BFPC on October 28, 1999 and the Board subsequently approved Kramarski's termination on the basis of her refusal to answer questions, her alleged failure to produce requested documents, and her failure and refusal to report for work following her surgery. Although affirmed by the circuit court, this decision was later reversed by the Illinois Court of Appeals and Kramarski was ordered reinstated on February 8, 2002. Specifically, the court of appeals held that Kramarski had not conducted herself improperly in relation to her absence and conduct at the interrogation, that the BFPC's decision was against the manifest weight of the evidence, and that the Department had no cause to terminate Kramarski based on the conduct alleged in Chief McCarthy's complaint. *See Kramarski v. Village of Orland Park, et al.*, 1-00-2708, Appellate Court of Illinois, 1st District, Feb. 8, 2002. The Illinois Supreme Court denied the Village's application for certificate of appealability on May 30, 2002.

Following her termination, Kramarski filed a wide-ranging complaint against the Village of Orland Park and Chief McCarthy in

his official and individual capacities alleging numerous state and federal claims. Now before the Court are the Village's Motion for Summary Judgment and Motion to Strike, along with a Cross-motion for Summary Judgment supposedly contained in Kramarski's Response to the Village's Motion for Summary Judgment.

## MOTION FOR SUMMARY JUDGMENT

### *Standard*

Summary judgment is appropriate where "the pleadings, depositions, answers to interrogatories, and admissions on file, together with affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." FED.R.CIV.P. 56(c). The court must "review the record in the light most favorable to the nonmoving party and draw all reasonable inferences in that party's favor." *Vanasco v. National-Louis University*, 137 F.3d 962, 964 (7th Cir. 1998). Nevertheless, the party who bears the burden of proof on an issue may not rest on the pleadings, but must affirmatively demonstrate that there is a genuine issue of material fact that requires trial. *Warsco v. Preferred Technical Group*, 258 F.3d 557, 563 (7th Cir. 2001). A genuine issue of material fact is not shown by the mere existence of "some alleged factual dispute between the parties," *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247 (1986), or by "some metaphysical doubt as to the material facts." *Matsushita Electric Industrial Company v. Zenith*

*Radio Corp.*, 475 U.S. 574, 586 (1986). In the employment discrimination context, summary judgment is warranted where "the evidence, interpreted favorably to the plaintiff, could [not] persuade a reasonable jury that the employer had discriminated against the plaintiff." *Palucki v. Sears, Roebuck & Co.*, 879 F.2d 1568, 1570 (7th Cir. 1989).

## DISCUSSION

### MOTION TO STRIKE

The Village has made a Motion to Strike the report of Kramarski's expert witness, Chief Penny Harrington, as well as nearly all of the declarations submitted with Kramarski's response to the Village's Motion for Summary Judgment. The Court will not add to this already lengthy opinion with an exhaustive line-by-line analysis of the Village's detailed motion. The Court has taken care to avoid relying on any inadmissible or irrelevant evidence in ruling on the current motion. Likewise, the expert report of Chief Harrington did not factor into the Court's analysis. The Village may raise any continuing objections it might have to Chief Harrington's report prior to trial in the form of a motion *in limine*. The Village's motion to strike is therefore denied.

### PLAINTIFF'S "COUNTER-MOTION FOR SUMMARY JUDGMENT"

Kramarski's response to the Village's Motion for Summary Judgment is entitled "Plaintiff's Response to Defendant's Motion for Summary Judgment and Plaintiff's Counter-Motion." The closest

thing the Court could find to a motion for summary judgment is approximately one page of text addressing Kramarski's Title VII retaliation claim which has been placed under the heading "Summary Judgment is Warranted in Plaintiff's Favor." The text that follows under this heading is not even close to complying with either the letter or spirit of Local Rule 56.1. For example, Kramarski states that "retaliation fell on the heels of the protected conduct" and then cites as support "Pl.'s 56.1(b) ¶¶ 53-342." To be fair, both parties in this case are guilty of shirking their Rule 56.1 responsibilities. *See Greer v. Board of Educ.*, 267 F.3d 723, 727 (7th Cir. 2001) (stating that "[A] lawsuit is not a game of hunt the peanut. Employment discrimination cases are extremely fact-intensive, and neither appellate courts nor district courts are obliged in our adversary system to scour the record looking for factual disputes.")(citation omitted). As will be seen in the discussion of Kramarski's Title VII retaliation claim below, she is clearly not entitled to summary judgment on this claim. To the extent that Kramarski's argument on pages 20 and 21 of her response brief could be construed as a motion for summary judgment in her favor, that motion is denied.

## SCOPE OF EARLIER RELEASES

The Village argues that an agreement executed by the current parties in February 1999 released the Village from all liability relating to any disciplinary action taken prior to Kramarski's

discharge. Under Illinois law, the intention of the parties controls the scope and effect of a release and courts are to determine the parties' intent from both the language used and the circumstances of the transaction. *Capocy v. Kirtadze*, 183 F.3d 629, 632 (7th Cir. 1999). Paragraph 4(E) of the agreement states that Kramarski "does hereby waive and release any and all claims she has or might have had against the Village of Orland Park, or any of its officials . . . regarding any act or omission by any entity or person released *relating to the subject matter of the appeal and the disciplinary process*" (emphasis added). The agreement states specifically that the subject matter of the appeal is the disciplinary action initiated by Chief McCarthy for two alleged acts of misconduct: damage to department property on November 11, 1998 and disobedience of an order on November 8, 1998. However, the agreement does not contain language of general release and does not support the broader reading suggested by the Village. *See Carona v. Illinois Central Gulf Railroad Co.*, 561 N.E.2d 239, 242, 184 Ill.App.3d 947 (5th Dist. 1990)(stating the preference under Illinois law for narrow readings of releases). Accordingly, Kramarski is barred only from basing any of her claims of alleged discriminatory or retaliatory practices in this case on the facts surrounding those two incidents or the disciplinary actions relating to those specific incidents.

## RES JUDICATA

The Village's next contention is that it is entitled to summary judgment on all counts, claiming that Kramarski's Title VII, § 1983, ADA, FMLA and state law claims are all barred by operation of the doctrine of *res judicata*. This argument is premised on the requirement that federal courts give state court judgments "the same full faith and credit . . . as they have by law or usage in the courts of such state." 28 U.S.C. § 1738. Federal courts apply a two-part inquiry in deciding whether a subsequent claim is barred by operation of the doctrine of *res judicata*: (1) whether the law of the state in which the prior judgment is rendered would give that judgment preclusive effect against the claims asserted in the federal action; and (2) whether the party against whom preclusion is asserted had a full and fair opportunity in the state proceedings to litigate the claims. *Kremer v. Chemical Constr. Corp.*, 456 U.S. 461, 476 (1984).

The first prong of this analysis requires the court to look to Illinois' law of *res judicata* to determine if an Illinois court would give the prior judgment preclusive effect. The Illinois Supreme Court recently revisited the doctrine of *res judicata* in *Nowak v. St. Rita High School*, 757 N.E.2d 471, 197 Ill.2d 381 (2001). In Illinois, claims are precluded by operation of *res judicata* when: (1) there was a final judgment on the merits rendered by a court of competent jurisdiction; (2) there is an

identity of cause of action; and (3) there is an identity of parties and their privies. *Id.* at 477. Under Illinois law, "the conclusiveness of the judgment extends not only to matters actually determined, but also to matters which could properly have been raised and determined therein. This rule applies to every question relevant to and falling within the purview of the original action, in respect to matters of both claim . . . and defense, which could have been presented by the exercise of due diligence." *Hughey v. Indus. Comm'n.*, 394 N.E.2d 1164, 1166 (Ill. 1979).

The Seventh Circuit has stated previously that *res judicata* may bar plaintiffs from filing Title VII and § 1983 claims in federal court when they fail to raise these claims as defenses to disciplinary or termination actions brought against them before state administrative bodies. *See, e.g., Pirela v. Village of North Aurora*, 935 F.2d 909 (7th Cir. 1991). This conclusion is premised, in turn, on a presumption that state administrative bodies have the authority to hear discrimination defenses because the United States Supreme Court has held that state and federal courts exercise concurrent jurisdiction over Title VII and § 1983 claims. *Pirela*, 935 F.2d at 913 (citing *Yellow Freight System, Inc. v. Donnelly*, 494 U.S. 820 (1990). However, the inquiry for deciding whether a subsequent claim is barred by *res judicata* must always focus on whether the *law of the state in which the prior judgment is*

*rendered would give that judgment preclusive effect* against the claims asserted in the current action. *Kremer*, 456 U.S. at 476.

The first requirement of Illinois' *res judicata* doctrine is that a final judgment on the merits be rendered by a court of competent jurisdiction. *Res judicata* does not apply to bar an independent claim that is part of the same cause of action if the court in the first action lacked subject matter jurisdiction over that claim. *Village of Maywood Bd. of Fire and Police Comm'rs v. Dept. of Human Rights*, 695 N.E.2d 873, 880, 296 Ill.App.3d 570 (1st Dist. 1998). It is simply not accurate to state, as a matter of Illinois law, that a BFPC can exercise jurisdiction over claims of discrimination. In Illinois, all claims of discrimination must be initially adjudicated through the Illinois Department of Human Rights, pursuant to the rules and procedures set forth in the Illinois Human Rights Act (the "IHRA"). 775 ILCS 5/7B-102. Illinois further provides that "no court of this state shall have jurisdiction over the subject of an alleged civil rights violation other than as set forth in this Act." 775 ILCS 5/8-111(C). The Illinois Supreme Court has been unequivocal in its insistence that the Act is *the exclusive remedy* for employment discrimination claims. *See Krocka v. City of Chicago*, 203 F.3d 507, 516 (7th Cir. 2000). It is clear that Illinois courts do not recognize local BFPCs as "courts of competent jurisdiction" in which claims of discrimination must be raised or subsequently be barred by

operation of *res judicata*. *See Faulkner-King v. Wicks*, 590 N.E.2d 511, 517-18, 226 Ill.App.3d 962 (4th Dist. 1992) (rejecting specifically the argument that the Seventh Circuit's recognition of concurrent state court jurisdiction over discrimination claims authorizes Illinois courts to exercise jurisdiction in violation of the IHRA's exclusive remedy provision); *Village of Maywood Bd. of Fire and Police Comm'rs*, 695 N.E.2d. at 881 (same).

Finally, the Village contends that Kramarski's state law claims for intentional infliction of emotional distress and retaliatory discharge are also barred by *res judicata*. Since she had not yet been discharged, Kramarski clearly could not have raised a claim of retaliatory discharge before the BFPC even if it could properly exercise jurisdiction over such claims. Likewise, there is nothing in the Illinois BFPC statute or Illinois case law suggesting that a BFPC sits as a court of general jurisdiction, hearing any claim an officer may have against the Department. 65 ILCS 5/10-2.1-1 through 30. Kramarski could not have raised her claim for intentional infliction of emotional distress before the BFPC or in the subsequent administrative review of the BFPC's decision by the circuit and appellate courts of Illinois. Accordingly, Kramarski is not barred by *res judicata* from pursuing her present federal and state law claims.

## COUNT I - TITLE VII CLAIMS

The Village seeks summary judgment on Count I, contending that Kramarski cannot establish several required elements of her Title VII claims for discrimination and hostile work environment.

### Discrimination Claim

A plaintiff in an employment discrimination action may prove discrimination through either direct evidence or indirect evidence, using the burden shifting approach set forth in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973). In both cases the burden is on Kramarski, as the plaintiff, to show that genuine issues exist for trial. *Griffin v. City of Milwaukee*, 74 F.3d 824, 827 (7th Cir. 1996). Kramarski believes she can meet her burden with both direct and indirect evidence.

### Direct Evidence

For statements to qualify as direct evidence of discrimination, they must relate to and be made contemporaneously with an adverse employment action. *rkel v. Bd. of Regents of Univ. of Wisc. Sys.*, 276 F.3d 906, 910 (7th Cir. 2002). Direct evidence of discrimination proves the particular fact in question without reliance upon inference or presumption. *Id.*; *Gorence v. Eagle Food Ctrs.*, Inc., 242 F.3d 759, 762 (7th Cir. 2001)(citing as an example of direct evidence the statement "I fired Judy because she was an old woman."). While the comments Kramarski attributes to Chief McCarthy and his staff may be construed as hostile or even

bigoted, they are not direct evidence of discrimination as defined by the Seventh Circuit. Moreover, Kramarski has not directed the Court to any evidence that these alleged statements were made contemporaneously with an adverse employment action. *Markel*, 276 F.3d at 910.

### Indirect Evidence

Under the *McDonnell Douglas* analysis, Kramarski meets her burden of establishing a *prima facie* case of gender discrimination if she demonstrates that: (1) she is a member of a protected class; (2) she was performing her job to her employer's legitimate expectations; (3) in spite of her meeting the legitimate expectations of her employer, she suffered an adverse employment action; and (4) she was treated less favorably than similarly situated male employers. *Markel*, 276 F.3d at 911 (citations omitted). The Village concedes that Kramarski is a member of a protected class and that she suffered an adverse employment action, but contend that Kramarski cannot establish that she was meeting the Village's legitimate job expectations or that she was treated differently than similarly situated male employees.

Kramarski points to the satisfactory performance evaluations she received throughout her employment as establishing that she was performing her job to her employer's legitimate expectations. To support its contention that Kramarski was not meeting legitimate expectations, the Village offers no evidence other than the facts

surrounding Kramarski's conduct in relation to her January 5, 1999 nasal reconstruction surgery. These are precisely the same facts and allegations which formed the basis of the charge filed by Chief McCarthy with the BFPC in seeking Kramarski's termination. Unlike Kramarski's claims of discrimination, the questions of fact and law arising from Kramarski's termination have already been fully litigated in the Illinois courts and Kramarski argues that the Village should be estopped from relitigating those issues in the present case.

The Court must look to the law of Illinois to determine whether or not to give preclusive effect to the judgement of the Illinois Court of Appeals. *Marrese v. American Academy of Orthopaedic Surgeons*, 470 U.S. 373, 375 (1985); *County of Cook v. Midcon et al.*, 773 F.2d 892, 898 (7th Cir. 1988). The requirements for application of collateral estoppel in Illinois are: (1) the issue decided in the prior adjudication is identical to the one presented in the suit in question; (2) there was a final judgment on the merits in the prior adjudication; and (3) the party against whom estoppel is asserted was a party or in privity with a party to the prior adjudication. *Nowak*, 757 N.E.2d at 478 (citations omitted). The facts and issues raised by the Village in the current action as evidence that Kramarski did not meet legitimate expectations are identical to those already adjudicated in the proceedings before the BFPC and the circuit and appellate courts of

Illinois: the facts surrounding Kramarski's nasal reconstruction surgery and the interrogation and disciplinary action stemming from those incidents. *See Kramarski v. Village of Orland Park et al.*, 1-00-2708, Appellate Court of Illinois, 1st District, Feb. 8, 2002. The Illinois Supreme Court denied the Village's petition for leave to appeal on May 30, 2002, making the reinstatement order of the Illinois Court of Appeals a final judgment on the merits. Finally, Kramarski is currently suing the Village of Orland Park and Chief McCarthy. In state court, she sued the Orland Park Board of Fire and Police Commissioners, its members, and Chief McCarthy. Kramarski and McCarthy are present in both suits. Although the Orland Park BFPC was named in the first suit and the Village of Orland Park was named in the current suit, this distinction, as the Village points out, makes no difference in this context since the BFPC and Village have sufficiently similar legal interests. *Davis v. City of Chicago*, 53 F.3d 801, 803 (7th Cir. 1995). So, the requirement of identity of parties or their privies is also met. The Village is therefore estopped in this action from rearguing that Kramarski was not meeting the Department's legitimate expectations based on the reasons it offered for her termination in the Illinois courts. Accordingly, Kramarski has sufficient evidence that she meeting her employer's legitimate expectations. As to the final element of Kramarski's *prima facie* discrimination case, Kramarski does offer evidence that she was treated less

favorably than similarly situated male officers in respect to the Department's decision to seek her termination based on her "misconduct."

Faced with a *prima facie* case of discrimination, the burden shifts to the employer to state a facially legitimate reason for the employee's discharge. As noted above, the reasons stated for Kramarski's discharge are those recently rejected by the Illinois Court of Appeals: Kramarski's absence from work following her surgery, her refusal to answer certain questions during an interrogation without her worker's compensation attorney present, and her alleged failure to produce certain requested items. To demonstrate pretext, Kramarski bears the burden of establishing that her employer's proffered reason "is not worthy of belief." *Sanchez v. Henderson*, 188 F.3d 740, 746 (7th Cir. 1999). Kramarski can meet her burden by providing evidence tending to prove that the Village's proffered reasons for her discharge are "factually baseless . . . or were insufficient to motivate the discharge." *Gordon v. United Airlines, Inc.*, 246 F.3d 848, 889 (7th Cir. 2001) citing *Adreani*, 154 F.3d at 395.

The Illinois Court of Appeals has already ruled that the proffered reasons for Kramarski's discharge were insufficient to motivate her discharge and, as discussed above, the Village is now estopped from relitigating that issue here. Accordingly, the

Village's Motion for Summary Judgment as to Kramarski's discrimination claim must be denied.

### Hostile Work Environment Claim

### National Railroad Passenger Corp. v. Morgan

As part of her Title VII claim, Kramarski also alleges that the Village is responsible for perpetuating a hostile work environment. Before advancing to a discussion of Kramarski's claim, the Court must say a word about the applicability to this case of *National Railroad Passenger Corp. v. Morgan*, 536 U.S. _____ (2002). This Court ruled previously that Kramarski could not base any of her Title VII claims on conduct that fell outside of the 300-day filing period, relying on the Seventh Circuit's decision in *Galloway v. General Motors Service Parts Operations*, 78 F.3d 1164 (1996). In reversing a decision of the Ninth Circuit Court of Appeals that also relied on *Galloway,* the Supreme Court ruled unequivocally in *Morgan* that evidence of acts occurring outside the 300-day period may form the basis of a hostile work environment claim so long as at least one act falls within the filing period. *See* Slip Op. at 12-18. Accordingly, Kramarski may advance her hostile work environment claim with evidence of acts outside the 300-day period.

### Hostile Work Environment

An employer violates Title VII whenever discrimination based on sex creates a hostile or abusive work environment. *Meritor*

*Savings Bank, FSB v. Vinson*, 477 U.S. 57, 66 (1986). To be actionable, the conduct must be "sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment." *Id.* at 67. To establish that the alleged discriminatory treatment occurred because of her gender, the plaintiff must show that she was exposed to adverse terms or conditions of employment to which male members of the department were not exposed. *Onacle v. Sundowner Offshore Servs., Inc.*, 523 U.S. 75, 80 (1998). The plaintiff must also show that the workplace was both subjectively and objectively hostile – that she actually perceived the environment as hostile or abusive and that a reasonable person would regard it as such. *Harris v. Forklift Sys., Inc.*, 510 U.S. 17, 21-22 (1993). However, the harassment need not be both pervasive and severe – "one extremely serious act of harassment could rise to an actionable level as could a series of less severe acts." *Haugerud v. Amery School Dist.*, 259 F.3d 678, 693 (7th Cir. 2001). In assessing whether a plaintiff has met the objective standard, a court should consider all the circumstances, including "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Harris*, 510 U.S. at 24. In essence, to survive summary judgment, the Court must decide whether Kramarski has evidence sufficient to

convince a reasonable trier of fact that she was in fact harassed, that she was harassed because of her sex, and that the conduct was so severe *or* pervasive as to create a subjectively and objectively hostile work environment.

The Village does not dispute, at least for purposes of its summary judgment motion, that Kramarski can meet the subjective part of the test. Kramarski made several complaints to supervisory officers that would seem to be a sufficient basis for a jury to find that she considered the environment to be hostile to her based on her gender. The Village does contest whether there is evidence in the record of conduct sufficiently severe or pervasive so as to create an objectively hostile work environment.

When taken in isolation, the individual incidents of Kramarski being "keyed on" and denied backup by her fellow officers may not seem so severe as to create an objectively hostile work environment. However, there is evidence suggesting that these acts were sufficiently pervasive and that they seemed to have unreasonably interfered with Kramarski's ability to do her job safely and effectively. Like all police officers, Kramarski depended on her fellow officers and supervisors to provide her with assistance and backup in potentially dangerous situations. By denying her backup and blocking out her radio transmissions, the other officers would have "attacked the very foundations of her day-to-day existence and personal safety as a police officer."

*Collins v. Village of Woodridge*, 96 F.Supp.2d 744, 750 (N.D. Ill. 2000). These actions were at least potentially physically threatening, certainly humiliating, and would unreasonably interfere with a novice police officer's work. *Id.* Kramarski has proffered sufficient evidence from which a reasonable trier of fact could find that she has met the objective standard. Additionally, when these acts of alleged harassment are viewed in the context of the derogatory comments made regarding Kramarski, the evidence suggesting a history of general departmental animus toward female officers, together with the lack of evidence suggesting that male officers were ever subjected to similar acts, Kramarski also meets her burden of providing evidence from which a trier of fact could find that the harassment occurred because of her gender. It will be for the jury to weigh the credibility and sufficiency of this evidence at trial.

### The Village of Orland Park's Liability

The inquiry does not end with the determination that Kramarski may have experienced a hostile work environment. A Title VII plaintiff must also show that the employer is liable for the discriminatory acts. *Smith v. Sheehan*, 189 F.3d 529, 533 (7th Cir. 1999). To hold an employer liable for co-worker harassment, a plaintiff must show that her employer "negligently failed to take reasonable steps to discover or remedy the harassment." *Id.* An employer can defeat a claim of hostile work environment created by

either supervisors or co-workers by showing that it exercised reasonable care to prevent and correct promptly any harassing behavior. *Burlington Industries, Inc. v. Ellerth*, 524 U.S. 742, 765 (1998).

Based on the submissions tendered to the Court, the Village is not entitled to summary judgment based on this affirmative defense. There are genuine issues of fact as to whether it exercised reasonable care to prevent harassing behavior. Kramarski has offered testimony regarding earlier incidents of harassing behavior involving the officers implicated in the current action, as well as evidence "suggesting a longstanding atmosphere of hostility and demeaning conduct toward women working at the Department." *Collins*, 96 F.Supp.2d at 750. While the Department has a written policy against gender-based harassment, there is evidence suggesting that it was not effectively disseminated or enforced. Regardless, the existence of a written policy against gender-based harassment does not entitle the Village to summary judgment "in light of evidence suggesting that gender-based hostility and harassment may have been common, known to the Department, and allowed to continue." *Id.* citing *Doe v. R.R. Donnelly & Sons, Inc.*, 42 F.3d 439, 447 (7th Cir. 1994). The Village's Motion for Summary Judgment on Count I must be denied.

## COUNT IV - § 1983 EQUAL PROTECTION

In Count IV, Kramarski makes a claim against the Village for violation of her Fourteenth Amendment right to equal protection in connection with the hostile work environment she was subjected to. Sexual harassment in the workplace can constitute gender discrimination in violation of the Equal Protection Clause. *Markham v. White*, 172 F.3d 486, 491 (7th Cir. 1999). However, the Village may be liable only if Kramarski can demonstrate that the Department had a policy, custom, or practice that caused the deprivation of her rights. *Monell v. Dept. of Soc. Serv.*, 436 U.S. 658, 690 (1978). Evidence of a longstanding or widespread practice of constitutional deprivation can suffice to establish the existence of such a policy, even where no formal policy exists. *Brokaw v. Mercer County*, 235 F.3d 1000, 1013 (7th Cir. 2000). Kramarski offers testimony from fellow officers indicating that just such a longstanding and widespread custom or practice may have existed. It will be for a jury to determine if Kramarski's evidence is sufficient to establish the Village's liability in this case.

## COUNTS II AND V - RETALIATION IN VIOLATION OF TITLE VII AND § 1983

### *Title VII - Retaliation*

Under Title VII, an employer is prohibited from retaliating against employees who oppose unlawful employment practices or

participate in any charge or investigation under the Act. 42 U.S.C. § 2000e-3(a). Kramarski contends that there is direct evidence of retaliation, citing to *Frobose v. American Sav. and Loan Ass'n. of Danville*, 152 F.3d 602, 616-17 (7th Cir, 1998). In *Frobose*, the plaintiff produced a letter from her employer stating that future management decisions regarding her employment would be made in light of her disclosures to regulators. *Id.* at 617. Kramarski does not offer evidence of this nature. Many of the statements she characterizes as direct evidence are actually statements speculating as to the Department's motivation for certain actions. While many of the statements singled out by Kramarski reflect general departmental animus toward her, none rise to the level of direct evidence establishing a nexus between an adverse employment action and a protected activity. Kramarski must therefore establish her claims through the familiar *McDonnell Douglas* burden-shifting analysis. Under this analysis, Kramarski bears the initial burden of establishing a *prima facie* case of retaliation. To survive summary judgment, Kramarski must demonstrate that: (1) she engaged in protected activity; (2) she suffered an adverse employment action subsequent to engaging in a protected activity; and (3) there exists a causal connection between the adverse employment action and her participation in the protected activity. *Johnson v. University of Wisconsin-Eau Claire*, 70 F.3d 469, 479 (7th Cir. 1995). Even if Kramarski establishes a

*prima facie* case, there is no Title VII violation if the Village can articulate a legitimate, nondiscriminatory reason for the employment action and Kramarski produces no evidence that the articulated reason for the action is a pretext, a lie specifically designed to mask the true retaliatory purpose for the unlawful employment action. *Stutler v. Illinois Dept. of Corrections*, 263 F.3d 698, 702 (7th Cir. 2001).

In order to demonstrate the causal connection necessary for a *prima facie* case, the plaintiff must demonstrate that the employer would not have taken an adverse employment action "but for" the protected expression. *Johnson*, 70 F.3d at 479. It is a well-established principle of Title VII jurisprudence that a substantial time lapse between the protected expression and an adverse action is counter-evidence of any causal connection between the two. *Id.* at 480. For temporal proximity between an employer's knowledge of a protected activity and an adverse employment action to create a genuine issue as to causality, the temporal proximity must be very close. *Clark County v. Breeden*, 532 U.S. 268, 273 (2001)(*per curiam*). Because the inference of causation weakens as the time between the protected expression and the adverse action increases, additional proof of a causal nexus then becomes necessary. *Oest v. Illinois Dept. of Corrections*, 240 F.3d 605, 616 (7th Cir. 2001).

In light of these stringent requirements, Kramarski indiscriminately refers the Court to some three hundred (300)

paragraphs of her 56.1(b) statement. The Court went through every paragraph of the statement along with the 119-paragraph interrogatory response Kramarski relies upon as the main support for her contention that she was retaliated against in violation of Title VII. While there is no evidence of Kramarski ever making a formal written complaint, the record does indicate that Kramarski complained orally of harassment to supervisors in October 1997 and February, May, October and November 1998. However, there is nothing in the record establishing the requisite causal connection between Kramarski's oral complaints and the alleged retaliation against her. Instead, the record reflects that the allegedly retaliatory conduct was merely the continuation of the conduct giving rise to the complaints. See McDonnell v. Cisneros, 84 F.3d 256, 259 (7th Cir. 1996). Indeed, Kramarski's EEOC charges of July 7, 1999 and January 11, 2000 were not filed until after Chief McCarthy had initiated the proceedings seeking her termination. Kramarski may have felt ridiculed, humiliated and ostracized due to the conduct of her supervisors and fellow officers, but without some nexus between a materially adverse employment action and an act of Kramarski complaining in opposition to unlawful employment practices, her evidence of abusive treatment during her employment goes toward establishing a hostile work environment rather than a retaliation claim. Id. at 258.

## *§ 1983 - Retaliation*

In Count V Kramarski alleges that she suffered retaliation for exercising her First Amendment rights. A state or municipality may not take adverse employment action against an employee "for reasons that infringe upon that employee's constitutionally protected interest in freedom of speech." *Patton v. Indianapolis Public School Board*, 276 F.3d 334, 340 (7th Cir. 2002)(citation omitted). To recover, Kramarski must establish that (1) she engaged in speech that was constitutionally protected and (2) that the Village retaliated against her because of that speech. *Id.* The filing of an EEOC charge of discrimination is a prime example of constitutionally protected speech. *Taylor v. Carmouche*, 214 F.3d 788, 791 (7th Cir. 2000). But Kramarski did not file her EEOC charge until well after Chief McCarthy filed his complaint seeking her termination. Moreover, the BFPC members who made the decision to terminate Kramarski in November 1999 claim either to have been completely unaware of the filing of the EEOC charge or that they cannot remember when they first became aware of the EEOC charge. Kramarski offers no evidence to the contrary or to establish that it played any role in the BFPC's decision.

Moreover, speech by public employees is protected by the First Amendment only if it addresses an issue of public concern. *Kokkinis v. Ivkovich*, 185 F.3d 840, 843 (7th Cir. 1999). Kramarski seeks to base her First Amendment retaliation claim on complaints

of individual sexual harassment that she allegedly made internally to supervisors and co-workers within the department during her employment. The Seventh Circuit has held unequivocally that speech relating only to the effect an employer's action has on the speaker is not shielded by the First Amendment, since it rarely involves a matter of public concern. *Wallscetti v. Fox*, 258 F.3d 662, 667 (7th Cir. 2001). Even if Kramarski proves that she contacted her supervisor's internal superiors regarding alleged discrimination, the fact that the complaints were made during the course of a long-running dispute with her immediate supervisors, combined with the individualized nature of the complaints, all indicate that the complaints of harassment were more in the nature of a private personnel dispute rather than an issue of public concern. *Id*. Defendants are accordingly entitled to summary judgment on Count V.

### Count VI - § 1983 Procedural Due Process

The Due Process Clause of the Fourteenth Amendment forbids states from depriving any person of life, liberty, or property without due process of law. To make out a claim under the Clause one must first demonstrate the existence of a constitutionally protected property or liberty interest, and then establish that she was deprived of that protected interest without due process of law. *Bigby v. City of Chicago*, 766 F.2d 1053, 1056 (7th Cir. 1985). Most of Kramarski's claim fails on its face to invoke recognized property or liberty interests.

In her complaint, Kramarski lists twelve separate actions which allegedly deprived her of a constitutionally protected liberty or property interest. Two of these clearly state, if anything, equal protection rather than due process violations: "treating Plaintiff differently than similarly situated males" and "subjecting Plaintiff to discipline more severe than similarly situated males." Kramarski's allegation that the Village "interfer[ed] with Plaintiff's promotional opportunities and interfer[ed] with Plaintiff's opportunity to become a member of the SRT team and [did not allow] her to attend a Fitness Trainer Seminar" simply do not invoke constitutionally protected property interests. *See Bigby*, 766 F.2d at 1056 citing *Sullivan v. Board of Fire & Police Comm'rs*, 430 N.E.2d 636, 640, 103 Ill.App.3d 167 (1981). Likewise with Kramarski's claim that she was "[given] demeaning assignments and unfair reprimands" and "denied training." Kramarski's contention that she was terminated "in response to her assertion of her lawful rights" falls under Kramarski's Title VII and state law claims for retaliatory discharge, and does not allege a due process violation. Similarly, Kramarski's broad allegation that the Village "interfered" with her right to receive pension and disability benefits is not a claim that she was deprived of some property interest without constitutionally adequate due process. This leaves us to consider the core of Kramarski's due process

claim – the constitutionality of the interrogation and hearing that lead to her termination.

Kramarski clearly had a constitutionally protected property interest in her position as a police officer. *Faustrum v. Board of Fire and Police Comm'rs of the Village of Waucunda*, 608 N.E.2d 640, 641, 240 Ill.App.3d 947 (2d Dist. 1993). Because Kramarski was deprived of a constitutionally protected property interest, she was entitled to due process of law. In the context of termination of a public employee, the employee is entitled to oral or written notice of the charges against him, an explanation of the employer's evidence, and an opportunity to present his side of the story. *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 545-46 (1985). Kramarski has not argued that the notice she received was deficient or that she was denied an opportunity to hear the evidence against her and present her side of the story. Rather, Kramarski argues that she was denied due process because she was not granted a continuance to have her counsel of choice, her worker's compensation attorney Mr. Pasche, represent her at the hearing but was instead represented by Mr. Rossi, an attorney from her union. The Uniform Peace Officers' Disciplinary Act does state that officers under investigation have a right to a continuance so that they may be represented by their counsel of choice at interrogations. 50 ILCS 725/3.9 (West 1998). This does not mean, however, that a violation of this statutory dictate amounts to an

actionable violation of Kramarski's Fourteenth Amendment right to due process.  It is well established that an employee has no constitutional right to counsel, let alone counsel of her choice, at a pre-termination hearing.  *Panozzo v. Rhoads*, 905 F.2d 135, 140 (7th Cir. 1990).  As the Seventh Circuit has noted, "states and municipalities are of course free to provide greater procedural protections than those offered by the federal Constitution, but it does not follow that these enhanced protections enlarge federal rights . . . local rules do not act as a rachet tightening the Due Process Clause."  *Id.* (citations omitted).

Kramarski also states, with absolutely no citation to the record, that "the decision had already been made to seek Plaintiff's termination before she was interrogated, which is sufficient to show that the process was writ with bias."  Whether Chief McCarthy or other command officers were inclined prior to the interrogation on January 20, 1999 to seek Kramarski's termination over the incidents surrounding her surgery, is simply irrelevant to the issue of whether the decision maker, the BFPC, was biased against her when it announced its decision to termination her employment in November 1999.  Kramarski also argues that "other evidence of bias before the BFPC suggests that Plaintiff was denied the process she was due."  The right to a fair hearing conducted by an impartial tribunal is the heart of due process.  *Bakalis v. Golembeski*, 35 F.3d 318, 323 (7th Cir. 1994).  To support her claim

that the BFPC was a biased forum, Kramarski's counsel indiscriminately refers the Court to 165 paragraphs of her Rule 56.1 statement of facts. Kramarski's "facts" are such things as declarations that "it was common knowledge and rumor that Officer Kramarski was going to be terminated" and an unwieldy amalgam of hearsay, irrelevant assertions, and conclusory allegations far too diffuse and wide-ranging to detail here. It suffices to say that the Court has reviewed the record and that none of the numerous "facts" presented by Kramarski are sufficient to overcome the presumption of honesty and integrity afforded the administrative decision maker. *See Bakalis*, 35 F.3d at 324-26 (reviewing circumstances in which evidence was sufficient to establish or suggest that a decision maker had prejudged a case).

## COUNT III - ADA

### *Estoppel*

Relying on *DeVito v. Chicago Park Dist.*, 270 F.3d 532 (7th Cir. 2001), the Village contends that Kramarski's representation to the Social Security Administration that she is "totally disabled" bars her from now claiming in the ADA context that she is able to perform the essential functions of her job, with or without reasonable accommodations. Under the Supreme Court's decision in *Cleveland v. Policy Management Systems Corp.*, 526 U.S. 795 (1999), an ADA plaintiff who obtains SSDI benefits by making sworn statements to the effect that she is completely disabled and thus

unable to work must satisfactorily address the inconsistency between that assertion and an ADA claim which is premised on her ability to work. *Id.* at 806-07; *Lee v. City of Salem*, 259 F.3d 667, 674 (7th Cir. 2001). The plaintiff may accomplish this by showing that the apparent inconsistency "can be resolved with reference to variance between the definitions of 'disability' contemplated by the ADA and SSDI." *Feldman v. American Mem. Life Ins*. Co., 196 F.3d 783, 791 (7th Cir. 1999). Kramarski points to the fact that the determination that she was totally disabled within the meaning of the SSA was premised on the fact that her impairments fell within certain SSA requirements. Kramarski also points out that she made no specific representations in her SSDI application regarding her ability or inability to perform particular activities with accommodation. The Court finds that Kramarski has provided a sufficient explanation for the apparent inconsistency between the statements in her SSDI application and her present ADA claim. *See Lee*, 259 F.3d at 675. Kramarski's ADA claim does not fail on this ground. Having addressed this threshold issue, the Court now considers the substance of Kramarski's ADA claim.

## ESTABLISHING A PRIMA FACIE CLAIM OF DISABILITY

### *Discrimination*

To establish disability discrimination, Kramarski must show that: (1) she is disabled within the meaning of the ADA; (2) she

is qualified to perform the essential functions of the job either with or without reasonable accommodation; and (3) she suffered from an adverse employment action because of her disability. *Bekker v. Humana Health Plan, Inc.*, 229 F.3d 662, 669-70 (7th Cir. 2000). Kramarski's initial burden is to establish that she is disabled as that term is defined in the ADA. *Roth v. Lutheran Gen. Hosp.*, 57 F.3d 1446, 1454 (7th Cir. 1995). The ADA recognizes three distinct categories of disability: (1) a physical or mental impairment that substantially limits one or more of the major life activities of the individual; (2) a record of such impairment; or (3) being regarded as having such an impairment. 42 U.S.C. § 12102(2); *Roth*, 57 F.3d at 1454. If Kramarski cannot establish that her condition rises to the level of disability as defined by the ADA, she cannot prevail on her claim even if the Village terminated her expressly because of her condition. *Christian v. St. Anthony Med. Ctr., Inc.*, 117 F.3d 1051, 1053 (7th Cir. 1997)(stating that "The Act is not a general protection of medically afflicted persons. . . . If the employer discriminates against them on account of their being (or believed by him to be) ill, even permanently ill, but not disabled, there is no violation."). Kramarski claims that she meets the ADA's disability requirements because she is actually disabled as that term is used in the ADA and because her alleged impairments were perceived as disabling by the Village.

### *Actual Disability*

There are three distinct elements that Kramarski must meet to establish an actual disability. *Bragdon v. Abbott*, 524 U.S. 624, 631 (1998). The Court must: (1) determine whether Kramarski's condition is a physical or mental impairment; (2) identify an affected life activity and determine whether it constitutes a "major life activity" for purposes of the ADA; and (3) determine whether Kramarski's impairment was a substantial limit on the identified major life activity. *See Moore v. J.B. Hunt Transport, Inc.*, 221 F.3d 944, 950-51 (7th Cir. 2000).

Among the physical and mental impairments claimed by Kramarski are: post-traumatic stress disorder, "major depression," breathing difficulties prior to nasal reconstructive surgery, neck pain, osteoarthritis, cervical pain, radiculophathy, and decreased fine motor coordination in her hands. Many, if not all, of these conditions would qualify as physical or mental impairments under the ADA. *See* 29 C.F.R. § 1630.2(h)(1). Kramarski contends that these physical and mental impairments cause her problems eating, sleeping, breathing, and seeing. These would certainly qualify as major life activities under the ADA. *See* 29 C.F.R. § 1630.2(i). Were any of these life activities substantially limited for Kramarski? In the context of working, "substantially limits" does not mean "an inability to perform a particular job for a particular employer . . . the impairment must substantially limit employment

generally." *Byrne v. Board of Educ.*, 979 F.2d 560, 565 (7th Cir. 1992); 29 C.F.R. § 1630.2(j)(3)(i). Kramarski has not proffered any evidence that the impairments she claims actually precluded (or currently precludes) her from a class or range of jobs for which she possesses the necessary training, skills and abilities. Kramarski cites to absolutely no testimony from doctors, physical therapists, or other factual support for her contention that her alleged impairments substantially impaired any of the ADA's major life activities in any way. *See Taylor v. Monsanto Co.*, 150 F.3d 806. 809 (7th Cir. 1998)(stating that conclusory and self-serving allegations unsupported by the record fail to preclude summary judgment). Like the plaintiff in *Moore*, Kramarski has failed to come forward with specific facts showing a genuine issue for trial. She cannot, with nothing more than conclusory allegations, defeat the Village's motion for summary judgment. *Moore*, 221 F.3d at 952-53.

### *Perceived Disability*

Kramarski also argues that she is disabled within the meaning of the ADA because the Village discriminated against her based on its perception that she was disabled. 42 U.S.C. § 12102(2)(C). To prevail on an ADA claim premised on perceived disability, the plaintiff must show that an employer "made an employment decision because of a perception of disability based on 'myth, fear or stereotype.'" 29 C.F.R. Pt. 1630, App. § 1630.2(l) (1999). This

provision of the ADA was intended to meet the concern "that employers will act on a misunderstanding of an individual's impairment with the result that a qualified, non-disabled person will be precluded from employment." *Moore*, 221 F.3d at 954.

If Kramarski is to be considered disabled based on a perceived disability, she must do more than simply show that the Village was aware of her impairment; Kramarski must also show that the Village knew of the impairment and *believed that she was substantially limited because of it. Id.* citing *Skorup v. Modern Door Corp.*, 153 F.3d 512, 515 (7th Cir. 1998)(emphasis added). Kramarski can point to factual support for her contention that the Village was aware that she claimed to suffer from pain due to neck injuries and that she had difficulty breathing on occasion. Kramarski fails, however, to support her contention that anyone believed her to be substantially limited in her ability to work as a result of these alleged impairments, or that they drew conclusions from these perceived impairments based on "myth, fear or stereotype." Kramarski does point to the fact that she appeared before the Board of Fire and Police Commissioners in a neck brace shortly before the Board's decision to terminate her employment. However, the Seventh Circuit has consistently refused to assume a perception of disability based on the mere fact of termination. *Moore*, 221 F.3d at 954; *Harrington v. Rice Lake Weighing Sys., Inc.*, 122 F.3d 456, 460 (7th Cir. 1997). As a result, Kramarski fails to establish

that the Village ever perceived her as being precluded from a wide range of jobs due to her alleged impairments. Kramarski has not met her burden of establishing that she is disabled as that term is defined in the ADA and the Village is accordingly entitled to summary judgment on Count III.

## COUNT VII - INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS

Under Illinois law, the Illinois Human Rights Act ("IHRA") preempts all state law claims "seeking redress for a 'civil rights violation' within the meaning of the statute." *Geise v. Phoenix Co. of Chicago, Inc.*, 639 N.E.2d 1273, 1276 (Ill. 1994). The IHRA does not prohibit a court from exercising jurisdiction over all tort claims factually related to incidents of sexual harassment, but only those where there would be no common law claim absent the duties created by the IHRA. *Maksimovic v. Tsogalis*, 687 N.E.2d 21, 23 (Ill. 1997). The Village cites to *Krocka v. Chicago*, 203 F.3d 507 (2000) as supporting dismissal of Kramarski's IIED claim. In that case, the IIED claim was premised on several statements by Chicago Police Department employees regarding Plaintiff's mental condition. The court found that the comments were inextricably linked to Plaintiff's disability discrimination claim because they were offensive only to the extent that the comments referred to his disability. *Id.* at 517. Here, Kramarski alleges acts such as interruption of her radio transmissions and the failure to provide backup as the basis for her IIED claim. The offensiveness of these

acts is not inextricably linked to some duty created by Illinois'
civil rights laws and Kramarski's claim for IIED is therefore not
preempted under the *Maksimovic* doctrine.

In order to prevail on a cause of action for intentional
infliction of emotional distress, a plaintiff must establish that:
(1) the defendant's conduct was extreme and outrageous; (2) the
defendant either intended that his conduct should inflict severe
emotional distress, or knew that there was a high probability that
his conduct would cause severe emotional distress; and (3) the
defendant's conduct did in fact cause severe emotional distress.
*Doe v. Calumet City*, 641 N.E.2d 498, 506 (Ill. 1994). Liability
for intentional infliction of emotional distress will be found only
where "the conduct has been so outrageous in character, and so
extreme in degree, as to go beyond all possible bounds of decency."
*Harrsiton v. Chicago Tribune Co.*, 992 F.2d 697, 702 (7th Cir.
1993). Indeed, it is not sufficient that a defendant "acted with
an intent which is tortious or even criminal, or . . . even that
his conduct has been characterized by 'malice,' or a degree of
aggravation which would entitle the plaintiff to punitive damages
for another tort." *Public Finance Corp. v. Davis*, 360 N.E.2d 765,
767 (Ill. 1976). In her response to the Village's motion,
Kramarski lists some thirteen instances of conduct which she
characterizes as extreme and outrageous. These acts include
denying Kramarski back-up, failing to remedy complaints that she

was not receiving back up, interrupting her radio transmissions, ostracizing her, and subjecting her to unwarranted criticisms. However, none of this conduct rises to the requisite level of extreme and outrageous behavior required under Illinois law. *See McGrath v. Fahey*, 533 N.E.2d 806, 809 (Ill. 1988)(holding that "mere insults, indignities, threats, annoyances, petty oppressions or trivialities" are not actionable as intentional infliction of emotional distress). The Village is therefore entitled to summary judgment on Count VII.

## COUNT VIII - RETALIATORY DISCHARGE
## IN VIOLATION OF ILLINOIS LAW

To recover for retaliatory discharge stemming from the filing of a worker's compensation claim, an employee must prove that: (1) she was an employee before the injury; (2) she exercised a right granted by the Worker's Compensation Act; and (3) she was discharged and that the discharge was causally related to her filing a claim under the Worker's Compensation Act. *Clemons v. Mechanical Devices Co.*, 704 N.E.2d 403, 406 (Ill. 1998). If an employer comes forward with a valid, non-pretextual basis for discharging the employee and the trier of fact believes it, the causation element is not met. *Hartlein v. Illinois Power Co.*, 601 N.E.2d 720, 728, 151 Ill.2d 142 (1992). However, if a plaintiff convinces a trier of fact that "it is more likely than not that the employer did not act for its proffered reasons, the employer's decision remains unexplained and the inferences from the evidence

produced by the plaintiff may be sufficient to prove the ultimate fact of discriminatory intent." *Hiatt v. Rockwell International Corp.*, 26 F.3d 761, 768 (7th Cir. 1994)(citation omitted).

The Village does not dispute that Kramarski was an employee before the injury and that she exercised a right granted by the Worker's Compensation Act. Rather, the Village contends that it is entitled to summary judgment because the reasons stated before the BFPC as the basis for Kramarski's discharge were sufficient cause for her termination. These same reasons, Kramarski's absence from work following her surgery, her refusal to answer certain questions during an interrogation and her alleged failure to produce certain documents, were offered as the legitimate non-discriminatory reason for seeking Plaintiff's termination in the Illinois courts and were explicitly rejected by the Illinois Court of Appeals. As already discussed above, the Village is collaterally estopped from offering these "infractions" as a valid basis for her discharge in this case. The Village provides no other explanation for the discharge in its briefs. In the absence of a valid explanation for the discharge, the employer's decision remains unexplained and Kramarski's circumstantial evidence and the reasonable inferences to be drawn from that evidence could convince a jury that Kramarski's discharge was causally related to the filing of her worker's compensation claim. The Village's motion for summary judgment on Count VIII must therefore be denied.

## COUNT IX - FMLA

In Count IX, Kramarski alleges that the Village violated the Family and Medical Leave Act ("FMLA") by failing to provide unpaid medical leave as required under the Act. *See* 29 U.S.C. § 2601 *et seq.* The FMLA requires employers to grant unpaid leave for employees who suffer from a "serious health condition." 29 C.F.R. § 825.112(4). Kramarski's inability to work due to a course of prescription medication administered following nasal reconstructive surgery does qualify as a "serious health condition" under the FMLA. *See* 29 C.F.R. § 825.114(b). However, an employer's duty to grant FMLA leave is not triggered if the employee fails to give the employer proper notice of her need for such leave. *Collins v. NTN-Bower Corp.*, 272 F.3d 1006, 1008 (7th Cir. 2001). Generally, an employee is expected to give 30 days advance notice to the employer, stating the reasons for the leave and the expected timing and duration of the leave. *See* 29 C.F.R. § 825.302(a)-(c). If such advance notice is not possible due to emergency or unforseen circumstances, adequate notice must be given "as soon as practicable." 29 C.F.R. § 825.302(b).

Here, the record indicates that a narcotic analgesic was prescribed for Kramarski due to unexpected complications arising from outpatient nasal reconstructive surgery and that departmental regulations prohibited an officer using such medication from reporting for duty. Once this medication was prescribed, it became

Kramarski's duty to inform her employer of the need for leave, the reason, and the timing and expected duration of the leave "as soon as practicable." 29 C.F.R. § 825.302(b). The record indicates that Kramarski called in on a daily basis before her shift and simply told a non-supervisory department employee that she would not be able to work *that day*. The fact that Kramarski might not be able to return to work for an extended period due to the medication was only made known to the Department after several weeks of Kramarski calling in "sick" and much quibbling between the parties. Kramarski failed, for FMLA purposes, to provide her employer with timely and adequate notice of the need for FMLA leave and the Village cannot be held liable for failure to grant Kramarski FMLA leave in this instance. *See Collins*, 272 F.3d at 1008.

### CONCLUSION

For the reasons set forth above, the Village's Motion to Strike is DENIED. Defendants' Motion for Summary judgment is GRANTED as to Counts II, III, V, VI, VII and IX and DENIED as to Counts I, IV and VIII. Plaintiff's Cross-Motion for Summary Judgment is DENIED.

**IT IS SO ORDERED.**

_____
Harry D. Leinenweber, Judge
United States District Court

Date: *August 8, 2002*